UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEY ENERGY SERVICES, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. _____ |
| VS. | § | |
| | § | |
| EMP  SOLUTIONS,  INC.; | § | |
| EMP  SOLUTIONS,  LLC,  D/B/A | § | |
| EMP SOLUTIONS, INC.; EMPS, LLC, | § | |
| D/B/A EMP SOLUTIONS, INC.; AND | § | *Jury Trial* |
| JAY KOTHARI | § | |
| | § | |
| *Defendants* | | |

---

**PLAINTIFF KEY ENERGY SERVICES, LLC'S
ORIGINAL COMPLAINT**

---

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES **KEY ENERGY SERVICES, LLC** ("Plaintiff"), and files this

Original Complaint against EMP Solutions, Inc., EMP Solutions, LLC d/b/a EMP Solutions,

Inc., EMPS, LLC, d/b/a EMP Solutions, Inc. (collectively "EMP Defendants"), and

Jay Kothari ("Defendant Kothari') (all named defendants collectively referred to as

"Defendants"). In support thereof, Plaintiff would respectfully show unto the Court and Jury

as follows:

# I.

## <u>NATURE OF THE ACTION</u>

1.1     This case arises from several lightning strikes that occurred at Plaintiff's property and resulted in a catastrophic explosion and fire.  The property was equipped with a lightning suppressor system that was marketed, sold and installed by Defendants as being 100% effective in preventing lightning strikes within a 393-foot "coverage area." The lightning suppressor failed to prevent the strikes as guaranteed by Defendants, resulting in extensive damage to Plaintiff's property.   Following the strikes, Plaintiff presented a claim to Defendants based on, among other things, the guarantee provided by Defendants. Despite the fact that Defendants' own purported experts acknowledge that a lightning strike occurred within the "coverage area" and caused the damage to Plaintiff's property, Defendants have wrongfully failed to make good on their contractual guarantee to pay for the damage.  Accordingly, Plaintiff sues Defendants for negligence and gross negligence in the marketing, selling, and installing the lightning suppressors, strict liability arising from the sale of the lightning suppressors, breach of contract, and breach of warranty.

1.2     Alternatively, based upon investigation and reasonable belief, Defendants' marketing and selling of the line of lightning suppressors installed at Plaintiff's property is tantamount to a dangerous and irresponsible fraud.  Defendants have marketed and sold the same line of lightning suppressors to sports stadiums and other populated venues on the grounds that the device "almost camouflages the stadium from lightning." Despite those types of unsupported claims, which have been made by Defendant Kothari, President and CEO of EMP Solutions,

Inc., the evidence demonstrates that the device is nothing more than a hoax. In fact, reputable experts in the industry have determined that such devices do not possess the power to attract or repel lightning over any appreciable distance, that promising people such protection during lightning storms is irresponsible, and that relying on unproven "gimmicks" to protect people from lightning strikes is a recipe for tragedy. Indeed, it seems impossible that the lightning suppressor installed at Plaintiff's property, which is an unpowered device the size of a shoe box, could create a protective shield that stops 100% of lightning from forming in a nearly 500,000 square foot area. The lightning suppressors marketed, sold, and installed by Defendants are dangerous products that apparently have no foundation based on science. Accordingly, Plaintiff sues Defendants for fraudulent misrepresentation and fraudulent inducement.

## II.

## PARTIES

2.1    Plaintiff, Key Energy Services,, LLC, is a Texas limited liability company. At all times relevant to this lawsuit, the sole member and director of said limited liability company has been Key Energy Services, Inc., a Delaware corporation with its principal offices in Houston, Texas.

2.2    Defendant, EMP Solutions, Inc., is a company that holds itself out as a corporation. The principal place of business (i.e., its "nerve center) is located at 11650 Lantern Road, Suite 105, Fishers, Indiana 46038. At all times relevant to this lawsuit, said company has been doing business in the State of Texas. Said defendant may be served through its president at the following address, or wherever he may be found:

JAY KOTHARI
11650 LANTERN ROAD, STE. 105
FISHERS, INDIANA  46038

**Service of process and citation is requested at this time.**

2.3     Defendant, EMPS, LLC, d/b/a EMP Solutions, Inc., is a limited liability company

organized under the laws of the State of Indiana.  The principal place of business (i.e., its

"nerve center") is located at 9776 Scotch Pine Court, Fishers, Indiana 46037.  At all times

relevant to this lawsuit, said company has been doing business in the State of Texas.

Said defendant may be served through its registered agent at the following address, or

wherever he may be found:

JAY KOTHARI
9776 SCOTCH PINE COURT, STE. 105
FISHERS, INDIANA  46037

**Service of process and citation is requested at this time.**

2.4     Defendant, EMP Solutions, LLC, d/b/a EMP Solutions, Inc, is a limited liability

company organized under the laws of the State of Ohio.  The principal place of business (i.e.,

its "nerve center") is located at 11650 Lantern Road, Suite 105, Fishers, Indiana 46038.

At all times relevant to this lawsuit, said company has been doing business in the State of

Texas.  Said defendant may be served through its registered agent at the following address,

or wherever he may be found:

EMP SOLUTIONS
6655 CHRISMAN LANE
MIDDLETOWN, OHIO 45052

**Service of process and citation is requested at this time.**

2.5     Defendant, Jay Kothari, is an individual residing in Hamilton County, Indiana. Said individual has committed one or more acts or omissions in the State of Texas that give rise to this lawsuit. Said defendant may be served through at his residence, or wherever he may be found:

JAY KOTHARI
9776 SCOTCH PINE COURT, STE. 105
FISHERS, INDIANA  46037

**Service of process and citation is requested at this time.**

**III.**

**<u>JURISDICTION AND VENUE</u>**

3.1     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the present action is a civil action between Plaintiff, which is a citizen of Texas and Delaware, and Defendants, which are citizens of Ohio and Indiana, and the matter in controversy exceeds $75,000.00, exclusive of costs and interest. Accordingly, complete diversity of citizenship exists between the parties.

3.2     This Court has personal jurisdiction over Defendants because said defendants committed one or more acts and/or omissions, which are the subject of this lawsuit, in the State of Texas. Said acts and/or omissions arise to the level of constitutional minimum contacts, and, therefore, this Court has authority to exercise personal jurisdiction over Defendants. Specifically, Defendants conducted certain acts and/or omissions, as set forth below, which caused injury and damages to Plaintiff within the State of Texas. Thus, the controversy in question arises out of, and/or the operative facts of this matter are related to, Defendants' contacts with the State of Texas, satisfying the requirements for specific jurisdiction.

3.3     Venue is proper in the United States Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the federal district in question.  Specifically, Defendants conducted certain acts and/or omissions, as set forth below, which caused injury and damages to Plaintiff in Harris County, Texas, including, but not limited to, Defendants negotiating, executing, and/or performing a contract (i.e., a Standard Procurement Agreement for Goods and Services) with Plaintiff in Harris County, Texas.  Moreover, one or more Defendants executed a contract (i.e., a Standard Procurement Agreement for Goods and Services) with Plaintiff that is subject to a forum selection clause requiring the venue to be in Harris County, Texas.  Thus, venue is proper in the United States Southern District of Texas.

## IV.

## STATEMENT OF FACTS[1]

### A.     *CMCE Lightning Suppressors*

4.1     The CMCE line of lightning suppressors is marketed by Defendants as being revolutionary from a traditional lightning rod that simply channels a lightning strike. Instead of channeling the strike to prevent damage, the CMCE line of lightning suppressors supposedly prevents lightning from forming at all within a certain "coverage area" that protects the property.  In fact, Defendant Kothari has publically stated in a news article that the device "almost camouflages" buildings from lightning.

---

[1]

The statement of facts contained herein is hereby, in all things, incorporated under each heading of this petition as if set forth fully therein.

4.2     Defendants market the line of CMCE lightning suppressors as being 100% effective in preventing lightning from forming.  The following information regarding a residential version of the lightning suppressors appears on the EMP website, in relevant part, as follows:

> Imagine the lightning rod as a bullet proof vest used by law enforcement. The vest's function is to absorb the energy from the bullet much like a lightning rod attempts to absorb the energy from a lightning strike.  Lightning rods work but have a high rate of failure.  The CMCE, in contrast, unloads Mother Nature's 'gun' and stops the lightning from ever striking your property.

> Protection vs. Prevention; the choice is clear.  The CMCE-55 will provide you with 100% protection from a strike directly hitting your property.  We are so confident of this that we offer a 100% Money Back Guarantee in the event of a failure.

4.3     Like the residential version, the commercial version of the lightning suppressor (i.e., the CMCE-120) is marketed as being 100% effective in preventing lightning from forming at all within the "coverage area."  The coverage area for the CMCE-120 is supposedly a 393-foot radius from the device.  According to the website, the CMCE line of lighting suppressors are  "100% Guaranteed to Stop Lightning" within that area.

4.4     The CMCE line of lightning suppressors is shrouded in mystery.  The identity of the manufacturer is not provided on the EMP Solutions website, nor is readily found on the internet.  A press release indicates that EMP Solutions was formed in 2014 after being awarded a "long term, exclusive distribution deal" for the CMCE line of lightning suppressors.  However, the actual manufacturer of the lightning suppressors appears to be a closely-guarded secret.

4.5     One reason for the secrecy is likely that the CMCE line of lightning suppressors has drawn heavy criticism.  Reputable experts agree that lightning events are complex weather phenomena that often extend over many miles in many directions.  Accordingly, experts have expressed serious doubt that a small, unpowered object on a pole could possess powers to attract or repel lightning over an appreciable distance, and that such lightning suppressors simply are not rooted in established science.  Moreover, making representations that such a device protects people and property in open areas during storm conditions is irresponsible and an invitation for a lightning tragedy.

4.6     Simply stated, there appears to be no credible scientific basis for Defendants' marketing and representations that the CMCE-120 Lightning Suppressor can prevent lightning from forming within a 393-foot radius of the device.

**B.     *The Contract And No-Strike Guarantee***

4.7     On January 30, 2019, Plaintiff entered into a contract with Defendants to purchase numerous CMCE-120 Lightning Suppressor systems from Defendants for various oilfield properties it owned.  (Standard Procurement Agreement for Goods and Services, attached as "Exhibit 1" and incorporated by reference herein.)  The purchase was based upon, in part, Defendants marketing the CMCE-120 Lightning Suppressor as a device that is 100% effective in preventing the formation of lightning within a 393-foot radius of the device.  Defendant Kothari, President and CEO of EMP Solution, Inc., signed the contract on behalf of his company.  (Exhibit 1.)

-8-

4.8     Following the contract's execution, numerous CMCE-120 Lightning Suppressor systems were installed at different sites owned by Plaintiff.  Included among the sites were Plaintiff's facilities located at, or near, 6310 Elysian Fields Road in Marshall, Texas ("Marshall Yard"), 12386 US-84 in Joaquin, Texas ("Joaquin Yard"), and 1591 US-82 in Plains, Texas ("Plains Yard").  Defendants' involvement in the marketing and sale of the lightning suppressors did not stop with merely providing the devices to Plaintiff. Defendant Kothari personally assisted with the installation and inspection of, at least, some of the lightning suppressors systems purchased by Plaintiff.

4.9     The contract between Plaintiff and Defendants provides, among other things, that the CMCE-120 Lightning Suppressor in question was to be free of defects and that Defendants' work was to be performed in a good and workmanlike manner. (Exhibit 1, ¶ 7.)  The device was covered by a 10-year manufacturer's warranty.  (Exhibit 1, ¶ 13.)  Moreover, and independently, the contract states that the lightning suppressor carries a "Five Hundred Thousand Dollar ($500,000) No Strike Guarantee" ("No Strike Guarantee"). (Exhibit 1, ¶ 14.)  The No Strike Guarantee merely requires that a direct lightning strike occur within the area protected by the CMCE-120 Lightning Suppressor and that Plaintiff's property incur damage that can be "monetized." (Exhibit 1, ¶¶ 14.1-14.2.) Defendants agreed to pay actual physical damages up to $500,000 in the event of a covered lightning strike. (Exhibit 1, ¶ 14.)

### C.      *The Lightning Strikes And Damage To Plaintiffs' Property*

4.10     On September 4, 2020, despite Defendants' 100% guarantee that the CMCE-120 Lightning Suppressor system was 100% effective in preventing lightning from forming within the "coverage area" (i.e., a 393-foot radius) around the device, Plaintiff's Marshall Yard was struck by lightning numerous times.   Lightning strikes occurred within the "coverage area" where no lightning was supposed to form,  causing an explosion in the tank battery at that resulted in a fire.   The tank battery and other property suffered significant damage as a result of the strikes within the "coverage area."

4.11     Following  the  incident,  Defendants  sent  their  own  retained/purported  expert, Charles Curreri of Rimkus Consulting Group, Inc., to conduct an inspection.   Mr. Curreri observed and reported on the extensive damage caused to the property, including the fact that four of the tanks ruptured and that pieces of the tanks were ejected due to the explosion. Moreover, and importantly, Mr. Curreri indicated in his report that, at the least, one of the direct lightning strikes occurred at 185 feet from the tank battery, which is well within the "coverage area" where no lightning is supposed to form.   Mr. Curreri also noted in his report that he could not rule out that the tank battery was not subject to a direct strike upon the tanks themselves.

4.12    Upon investigation and reasonable belief, the CMCE-120 was negligently installed at the Marshall Yard.  The device was marketed and sold to Plaintiff as being 100% effective within the "coverage area" (i.e., a 393-foot radius) around the device,  and lightning clearly struck within the area that was supposed to be protected.  Had the device been properly installed by Defendants, the device would have prevented the strike in question.

4.13    Additionally, the contract between Plaintiff and Defendants provides that the CMCE-120 Lightning Suppressor was to be free of defects and that Defendants' work was to be performed in a good and workmanlike manner.  The device was covered by a 10-year manufacturer's warranty.  Moreover, and independently, the contract states that the lightning suppressor carries a "Five Hundred Thousand Dollar ($500,000) No Strike Guarantee" ("No Strike Guarantee").  By Defendant's own retained/purported expert report, those criteria triggering Defendants' obligations to pay the No Strike Guarantee claim have been met. Nevertheless, in breach of the contract and warranties provided, Defendants have rejected Plaintiff's claim to be compensated.  Defendants have breached their warranties to Plaintiff.

4.14    Alternatively, based upon investigation and reasonable belief, Defendants' marketing and selling of the CMCE line of lightning suppressors is fraudulent.   The lightning suppressors are, for lack of a better term, a hoax, or, at a minimum, not as advertised. Defendants make unsupported claims that something akin to an oversized Christmas ornament creates a protective shield that stops all lightning from forming in a nearly 500,000 square foot area.  Bolstering this fraud allegation is the fact that the manufacturer of the

CMCE line of lighting suppressors appears to be a closely-guarded secret.  The manufacturer is not mentioned in the contract, on Defendants' website, in articles involving Defendants, or found via internet search.  In short, the CMCE line of lightning suppressors is a dangerous product that apparently has no foundation based on science.

4.15   Regardless of whether the CMCE line of lightning suppressors is a fraud perpetrated on the public, or the CMCE-120 was negligently marketed and installed by Defendants, the end result is the same: The lightning strikes on Plaintiff's Marshall Yard in the CMCE-120 "covered area" resulted in an explosion and fire causing extensive damage to Plaintiff's property.  Nevertheless, Defendants refuse to honor their contractual obligations under, among other things, the No Strike Guarantee.  Plaintiff brings this civil action and seeks damages for Defendants' negligence, gross negligence, strict liability, breach of contract, breach of warranty, and fraudulent misrepresentation and fraudulent inducement.

**V.**

**<u>CAUSES OF ACTION</u>**

*A.*   *Negligence*

5.1   The evidence will show that, on the occasion in question, Defendants were guilty of various acts, wrongs, and/or omissions, which proximately caused the injuries and damages sustained by Plaintiff.  Specifically, Defendants were guilty of the following acts and/or omissions, all of which constitute negligence on their part:

    1.   Failing to use reasonable care in marketing the CMCE-120 Lightning Suppressor to Plaintiff;

-12-

2.      Failing to use reasonable care in providing information about the effectiveness of the CMCE-120 Lightning Suppressor to Plaintiff;

3.      Failing to use reasonable care in recommending the CMCE-120 Lightning Suppressor to Plaintiff for use at Plaintiff's properties;

4.      Failing to use reasonable care in providing instructions, plans, or schematics on the proper installation and use of the CMCE-120 Lightning Suppressor to Plaintiff;

5.      Failing to use reasonable care in warning Plaintiff of dangers pertaining to the CMCE-120 Lightning Suppressor that are not readily apparent to Plaintiff;

6.      Failing to use reasonable care in overseeing the installation of the CMCE-120 Lightning Suppressor at the Marshall Yard and other of Plaintiff's properties that said lightning suppressors were installed;

7.      Failing to use reasonable care in installing the CMCE-120 Lightning Suppressor at the Marshall Yard and other of Plaintiff's properties that said lightning suppressors were installed;

8.      Failing to use reasonable care in inspecting the CMCE-120 Lightning Suppressor at the Marshall Yard and other of Plaintiff's properties that said lightning suppressors were installed;

9.      Failing to use reasonable care to prevent injury and damages to the Marshall Yard and other of Plaintiff's properties that the CMCE-120 Lightning Suppressor were installed at when it was reasonably apparent that the properties would sustain injury and damage by virtue of a dangerous condition created by Defendants; and

10.     Failing to use reasonable care to avoid a foreseeable risk to the Marshall Yard and other of Plaintiff's properties when the danger was at least partially created by Defendants

5.2     Each of the foregoing acts and/or omissions constituted negligence which, individually and collectively, proximately caused the injuries to Plaintiff and the damages it sustained.  Moreover, Defendants were grossly negligent, as that term is defined by Chapter 41 of the Texas Civil Practices and Remedies Code, as their acts and/or omissions involved an extreme degree of risk of harm to Plaintiff, and Defendants had actual, subjective awareness of the risk but proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff.

5.3     Plaintiff seeks actual damages resulting from Defendants' negligence, including actual damages (i.e., the damage and losses resulting from the lightning strikes and fire, as well as associated damages), consequential damages (including, but not limited to, the replacement of all the CMCE-120 Lightning Suppressors at Plaintiffs' properties, lost revenue resulting from the lightning strikes, and loss of value to the Marshall Yard), and exemplary damages arising from Defendants' gross negligence.

**B.     *Strict Products Liability***

5.4     The evidence will show that Defendants marketed and failed to warn of a defective product that was sold to Plaintiff.  Specifically, the CMCE-120 Lightning Suppressors that were sold to Plaintiff are defective.  The suppressors reached Plaintiff without a substantial change in their condition from the time they were sold by Defendants.  The defect in the lightning suppressors prevent them from operating as intended, thereby rendering the lightning suppressors unreasonably dangerous.

5.5     Moreover, in terms of additional elements needed to prove a marketing and failure to warn strict liability claim, the evidence will show that Defendants knew or should have known of the risk to Plaintiff that the lightning suppressors would not function as intended. Defendants breached their duty to warn Plaintiff of the risk and/or failed to provide an adequate warning rendered the lightning suppressors unreasonably dangerous or defective. Said defects in the lightning suppressors were a producing cause of Plaintiff's injuries and damages.

5.6     Plaintiff seeks actual damages resulting from Defendants' negligence, including actual damages (i.e., the damage and losses resulting from the lightning strikes and fire, as well as associated damages), and consequential damages (including, but not limited to, the replacement of all the CMCE-120 Lightning Suppressors at Plaintiffs' properties, lost revenue resulting from the lightning strikes, and loss of value to the Marshall Yard).

## C.     *Breach Of Contract*

5.7     The evidence will show that Plaintiff fully performed all of its contractual obligations under the contract with Defendants (i.e., the Standard Procurement Agreement for Goods and Services). Nevertheless, Defendants have failed, without justification or excuse, to perform their contractual obligations. Defendants' failure to perform the obligations under the contract constitutes a material breach of contract. Specifically, Plaintiff asserts that Defendants breached the contractual terms in  the Standard Procurement Agreement for Goods and Services, and any exhibits or addendums thereto, as follows:

1)    By refusing to honor the No-Strike Guarantee when lightning struck within the coverage or protected area;

2)    By refusing to honor the 10-year manufacturer warranty that the CMCE-120 Lightning Suppressor would be 100% effective in preventing lightning within the coverage or protected area;

3)    By failing to honor the contractual agreement that the work performed by Defendants shall meet or exceed all applicable codes, standards, laws, and regulations, as well as the terms and conditions of the contract;

4)    By failing to honor the contractual agreement that the work performed by Defendants was to Plaintiff's specifications, including, but not limited to, that lightning would be prevented from forming within the coverage or protected area; and

5)    By failing to honor the contractual agreement that the work performed by Defendants was performed with "good material" and "merchantable quality" material.

5.8    All conditions precedent to the contract have been performed or have occurred. Further, Defendants' breach of the contracts resulted in injury/damages to Plaintiff.

5.9    Plaintiff seeks actual damages (i.e., the damage and losses resulting from the lightning strikes and fire, as well as associated damages), consequential damages (including, but not limited to, the replacement of all the CMCE-120 Lightning Suppressors at Plaintiffs' properties, lost revenue resulting from the lightning strikes, and loss of value to the Marshall Yard), and reasonable and necessary attorney's fees.

### D.  *Breach Of Warranty*

5.10   The evidence will show that Defendants have failed to honor express and implied warranties relating to the CMCE-120 Lightning Suppressors sold to Plaintiff.  Specifically, Defendants have breached express warranties regarding the effectiveness of the lightning suppressors that were made in their marketing materials, their website, and verbally to Plaintiff, as set forth further below.  Defendants have also breached the implied warranty of merchantability and implied warranty of fitness, s set forth further below.

5.11   As to express warranties, Defendants sold the lightning suppressors to Plaintiff. Defendants made representations to Plaintiff about the quality and/or characteristics of the lightning suppressors, specifically that they were 100% effective within the coverage or protected area. Defendants made these representations by virtue of marketing materials, their website, and verbal representations made to Plaintiff.  Said representations became a part of the basis of the bargain (i.e., the purchase of the lightning suppressors by Plaintiff from Defendants).  The lightning suppressors did not comply with the representations made by Defendants, resulting in injury and damages to Plaintiff.  Despite being notified of the matter by Plaintiff, Defendants  have failed to honor their express warranties.

5.12   As to the implied warranty of merchantability, Defendants sold the lightning suppressors to Plaintiff.  The lightning suppressors were unmerchantable, as they were not pass without objection in the trade, they were not of "fair average" quality when compared to other lightning management systems in the trade, they were not fit for an ordinary purpose

such as managing or preventing lightning strikes, they were not of the kind and quality agreed upon by the parties, and/or they did not conform to the promises made by Defendants about their effectiveness. Despite being notified of the matter by Plaintiff, Defendants have failed to honor their implied warranties.

5.13    As to the implied warranty of fitness, Defendants sold the lightning suppressors to Plaintiff. Defendants had knowledge that Plaintiff was buying the lightning suppressors for a particular purpose, namely preventing lightning strikes within the coverage or protected area. Plaintiff relied on Defendants' skill or judgment in selecting the lightning suppressors. Ultimately, the lightning suppressors that were delivered and installed were unfit for their purpose. Despite being notified of the matter by Plaintiff, Defendants have failed to honor their implied warranties.

5.14    Plaintiff seeks actual damages (i.e., the damage and losses resulting from the lightning strikes and fire, as well as associated damages), consequential damages (including, but not limited to, the replacement of all the CMCE-120 Lightning Suppressors at Plaintiffs' properties, lost revenue resulting from the lightning strikes, and loss of value to the Marshall Yard), and reasonable and necessary attorney's fees.

**E.    *Fraud***

5.15    The evidence will show that Defendants have committed fraud against Plaintiff. Specifically, Defendants made fraudulent misrepresentations to Plaintiff, and fraudulently induced Plaintiff to purchase the CMCE-120 Lightning Suppressors, as set forth further below.

5.16    As to fraudulent misrepresentations, Defendants made representations to Plaintiff about the quality and/or characteristics of the lightning suppressors, specifically that they were 100% effective within the coverage or protected area.   Defendants made these representations by virtue of marketing materials, their website, and verbal representations made to Plaintiff.  The representations were material and proved false.  Defendants knew that the representations were false and/or made the representations recklessly, as a positive assertion, and without knowledge of the truth.  Defendants made the representations so that Plaintiff would purchase the lightning suppressors.  Plaintiff relied on the representations when purchasing the lightning suppressors.  Plaintiff suffered injury and damages as a result.

5.17    As to fraudulent by nondisclosure, Defendants concealed or failed to disclose information to Plaintiff about the quality and/or characteristics of the lightning suppressors, specifically that they were not 100% effective within the coverage or protected area. Defendants had a duty to disclose the information by virtue of only partially disclosing certain information pertaining the the lightning suppressors.  Defendants knew that Plaintiff was ignorant of the information, and Plaintiff did not have an equal opportunity to discover same.   Defendants failed to disclose information so that Plaintiff would purchase the lightning suppressors.   Plaintiff relied on the nondisclosure or partial disclosure when purchasing the lightning suppressors.  Plaintiff suffered injury and damages as a result.

5.18    Plaintiff seeks actual damages resulting from Defendants' fraudulent acts, including actual damages (i.e., the damage and losses resulting from the lightning strikes and fire, as well as associated damages), consequential damages (including, but not limited to, the replacement of all the CMCE-120 Lightning Suppressors at Plaintiffs' properties, lost revenue resulting from the lightning strikes, and loss of value to the Marshall Yard), and exemplary damages arising from Defendants' fraudulent acts.

### F.    Vice Principal Doctrine

5.19    The evidence will show that, at all times material to this lawsuit, Defendant Kothari was a vice principal of EMP Defendants.  Defendant Kothari committed a tort, as set forth above, or executed a contract with Plaintiff, as set forth above.  Defendant Kothari is a corporate officer of EMP Defendants, and his acts and omissions pertaining to marketing, selling, and installing the CMCE-120 Lightning Suppressors were in the furtherance of EMP Defendants' business.  Accordingly, the acts of Defendant Kothari are the acts of EMP Defendants.

### G.    Veil Piercing

5.20    The evidence will show Defendant Kothari is individually and personally liable for the injuries and damages sustained by Plaintiff.  Defendant Kothari used EMP Defendants for the purpose of perpetuating an actual fraud upon Plaintiff, primarily so that Defendant Kothari could obtain a direct, personal benefit for himself.  Specifically, Defendant Kothari was a manager/principal of EMP Defendants at all times material to this lawsuit.  Defendant Kothari fraudulently induced (or directed certain employees or agents of EMP Defendants

to fraudulently induce) Plaintiff to purchase lightning suppressors that would not function as intended by representing to Plaintiff that the suppressors were 100% effective in preventing lightning within the coverage or protected area.  Defendant Kothari obtained the benefit of the bargain that EMP Defendants struck with Plaintiff.  As such, an actual or common-law fraud was perpetrated on Plaintiff and/or Plaintiff was fraudulently induced to purchase the lightning suppressors either by or at the direction of Defendant Kothari. Accordingly, Defendant Kothari, in his individual capacity, is vicariously liable for the injury and damages suffered by Plaintiff.

## VI.

## <u>DAMAGES</u>

6.1    Plaintiff seeks the following damages within the jurisdictional limits of this court, including:

1) Actual damages within the jurisdictional limits of this Court;

2) Consequential/economic damages;

3) Exemplary damages;

4) Pre-judgment interest at the highest rate allowed by law;

5) Post-judgment interest at the highest rate allowed by law; and

6) Reasonable and necessary attorney's fees and costs.

6.2    Plaintiff also requests any further relief available, in equity or in law.

## VII.

### JURY DEMAND

7.1     Plaintiff demands a jury be empaneled to try any disputed facts and issues that cannot

be resolved as a matter of law in this cause.

## VIII.

### RIGHT TO AMEND

8.1     Plaintiff herein reserves the right to seek to amend these pleadings once discovery has

been conducted, as would be permitted by the Federal Rules of Civil Procedure.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that this

Honorable Court find for Plaintiff in its asserted causes of action, and enter a judgment

against Defendants for damages.  Plaintiff additionally prays for such further relief, at either

law or equity, to which it may prove itself to be justly entitled.

Respectfully submitted,

**JOHANSON & FAIRLESS, L.L.P.**

By:     _____
CHRIS M. VOLF
Federal ID No. 30902
Texas Bar No. 24033299
1456 First Colony Blvd.
Sugar Land, Texas 77479
(281) 313-5000
Fax: (281) 340-5100
cvolf@jandflaw.com

ATTORNEYS FOR DEFENDANT
**KEY ENERGY SERVICES, LLC**

-22-